UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

AVOCET VENTURES, LP; NET PAY ADVANCE, INC.; MODEL FINANCE CO.; KASHABLE LLC; CONSUMER LENDING ASSOCIATES, LLC; FREEWAY FUNDING, INC.; CREDITCORP; *and* APPALACHIAN LENDING CORPORATION,

    *Plaintiffs*,

    *v.*

UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, *in her official capacity as Administrator of the Small Business Administration*; JANET YELLEN, *in her official capacity as United States Secretary of Treasury*; and THE UNITED STATES OF AMERICA,

    *Defendants*.

Case No.
4:22-cv-01070

Judge

Magistrate Judge

---

## COMPLAINT

---

    Plaintiffs Avocet Ventures, LP; Net Pay Advance, Inc.; Model Finance Co.; Kashable LLC; Consumer Lending Associates, LLC; Freeway Funding, Inc.; CreditCorp; and Appalachian Lending Corporation ("Plaintiffs"), by their attorneys, as and for their Complaint against Defendants the United States Small Business Administration, Isabella Casillas Guzman, Janet Yellen, and the United States of America ("Defendants"), allege as follows:

### NATURE OF THE ACTION

    1.    In March 2020, Congress passed the Paycheck Protection Program ("PPP") within the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), to provide desperately needed financial assistance to the Nation's small businesses. In the CARES Act, Congress mandated that "*any* business concern" was eligible to receive "first draw" PPP loan guarantees and that those loans would be

forgiven if the small-business recipient used them for expenses like payroll. Thus, by the CARES Act's plain text, the PPP provided essential economic relief to *every* type of small business, without creating any disfavored categories of businesses.

2. The Small Business Administration ("SBA") thereafter promulgated an interim final rule that—remarkably—excludes certain categories of small businesses from obtaining first-draw PPP loan guarantees and loan forgiveness, as a matter of arbitrary, administrative fiat. Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020) ("Exclusion Rule"). As relevant here, by applying 13 C.F.R. § 120.110 ("Section 120.110") (identifying businesses ineligible for SBA Section 7(a) loans) to the PPP, the SBA's Exclusion Rule inexplicably bars "[f]inancial businesses primarily engaged in the business of lending"—like Plaintiffs—from receiving first-draw PPP loan guarantees and loan forgiveness. *See id.* at 20,812. Nowhere in the Exclusion Rule does the SBA even attempt to justify this discriminatory treatment of these small businesses under the PPP.

3. The Exclusion Rule and all SBA denials of PPP loan forgiveness issued on the basis that the company is a "[f]inancial business[ ] primarily engaged in the business of lending" are unlawful for numerous independent reasons. The Rule and these denials are contrary to the CARES Act's plain text, which provides that "*any* business concern" may receive a first-draw PPP loan guarantee and forgiveness, which is capacious language that includes small businesses engaged in lending, like Plaintiffs. The Rule offers no legally defensible justification for ignoring the plain

statutory text.  Further, any reading of the CARES Act that would allow the SBA unfettered authority to choose which categories of businesses will receive loan forgiveness would both violate the major questions and render the CARES Act itself unconstitutional under the nondelegation doctrine.  The Rule and these denials are also unlawful as arbitrary and capricious both because the SBA offered no reasoned explanation for excluding any businesses identified in Section 120.110 but otherwise eligible for first-draw PPP loan guarantee and forgiveness, and, further, because the SBA thereafter arbitrarily exempted from the Exclusion Rule some of these businesses, including casinos and government-owned entities, among others, but did not similarly exempt small businesses engaged in lending.  Finally, the SBA has rendered the Rule and these denials unlawful by arbitrarily enforcing the Rule by means of serially giving loan forgiveness to many "[f]inancial businesses primarily engaged in the business of lending," without explanation, while denying relief to other identically situated companies.

4.     This Court should, among other relief: (1) vacate the Exclusion Rule nationwide to the extent that the Rule applies to "[f]inancial businesses primarily engaged in the business of lending"; (2) require that the SBA grant forgiveness of all first-draw PPP loans to all "[f]inancial businesses primarily engaged in the business of lending" who were denied forgiveness because they are "[f]inancial businesses primarily engaged in the business of lending," including all Plaintiffs; and (3) require the SBA to reimburse such businesses for all payments they have made on PPP loans.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1346(a)(2), and 1361.

6.    Plaintiffs have Article III standing because the SBA's Exclusion Rule and the agency's denial of PPP relief to Plaintiffs based upon that Rule have caused them concrete injuries, which concrete injuries are redressable by this Court granting Plaintiffs appropriate relief against this Rule.

7.    The SBA's Exclusion Rule and the agency's denials of PPP relief to Plaintiffs are final agency actions (or will imminently become final) under 5 U.S.C. § 704, which this Court has authority to review under 5 U.S.C. § 702.

8.    This Court has authority to issue Plaintiffs appropriate declaratory and injunctive relief under 28 U.S.C. § 2202.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Plaintiff Avocet Ventures, L.P. ("Avocet"), resides in this judicial district and no real property is involved in the action.

## PARTIES

### A.    Plaintiffs

10.    Plaintiff Avocet is a small development, investment, and finance business based in Fort Worth, Texas, helping local families fulfill the dream of home ownership for almost twenty years.

11.     Plaintiff Net Pay Advance, Inc. ("Net Pay") is a small lending business based in Wichita, Kansas, providing consumers in California, Kansas, and Texas with financing options since 2007.

12.     Plaintiff Model Finance Co. ("Model") is a small, family-owned finance business based in Orange, California, providing consumers in California, Arizona, Florida, Nevada, North Carolina, Texas, Washington, Ohio, Georgia, and South Carolina with recreational financing options for over fifty-five years.

13.     Plaintiff Kashable LLC ("Kashable") is a small finance and technology business based in New York City, New York, providing financial wellness products and services, including a loan program, to employees of certain employers and developing innovative products to improve the financial well-being of working America, with a commitment to both reliability and affordability.

14.     Plaintiff Consumer Lending Associates, LLC ("CLA") is a small finance business based in Kansas City, Missouri, providing consumers with financing options for almost twenty years.

15.     Plaintiff Freeway Funding, Inc. ("Freeway") is a small finance business specializing in auto loans based in Camarillo, California, providing consumers with auto-financing options for over fifteen years.

16.     Plaintiff CreditCorp is a small finance business based in Cleveland, Tennessee, providing consumers with -financing options.

17.     Plaintiff Appalachian Lending Corporation ("Appalachian") is a small independently owned and operated finance business located in Johnson City,

Tennessee, providing consumers in East Tennessee with personal loans and auto-financing options for over sixty years.

### B.    Defendants

18.    Defendant United States Small Business Administration is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.*  Under the CARES Act, the SBA administers the PPP.

19.    Defendant Isabella Casillas Guzman is the Administrator of the SBA and is sued in her official capacity only.  *See* 15 U.S.C. § 634(b)(1).  Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for these APA causes of action.

20.    Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued in her official capacity only.

21.    Defendant United States of America is a proper defendant in APA cases.  *See* 5 U.S.C. § 702.

## FACTUAL ALLEGATIONS

### A.    The CARES Act

22.    In March 2020, COVID-19, and the ensuing government-imposed restrictions on businesses' ability to operate, plunged our Nation's economy into turmoil and recession.  Small businesses across the country uniquely suffered from various pandemic-related economic pressures, as they operate on tighter margins than larger businesses and lack those larger businesses' access to traditional sources of funding.  *See* Alexander W. Bartik, et al., *The Impact of COVID-19 on Small*

*Business Outcomes and Expectations*, 117 Proc. Nat'l Acad. Scis. 17656, 17662 (2020).

23.    In light of small businesses' disproportionate economic hardship and these businesses' vital role in the American economy, Congress created the PPP to make significant, federally backed loan commitments to small businesses across the Nation, as part of the CARES Act, Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–94 (2020) (largely codified at 15 U.S.C. § 636(a)(36)).[1]  The CARES Act directs the SBA to implement the PPP.  15 U.S.C. § 9012.  To deliver relief through the PPP as quickly as possible, the CARES Act utilizes pre-existing funding and guarantee mechanisms under Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a), which in pre-pandemic times was the SBA's primary tool to distribute aid to small businesses.  *See generally* Small Bus. Admin., *7(a) Loans* (discussing the Section 7(a) Loan Program).[2]  Under the Section 7(a) Program, the SBA guarantees loans made by private institutions to small businesses, rather than disbursing funds directly to small businesses itself.

24.    In the CARES Act, Congress directed the SBA to "guarantee" PPP loans from private institutions to eligible small businesses harmed during the height of the COVID-19 pandemic.  *DV Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743, 745 (6th

---

[1] As amended by the Paycheck Protection Program and Health Care Enhancement Act ("Enhancement Act"), Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620, 621 (2020) (amending Section 1102(b)(1) of the CARES Act).

[2] Available at https://www.sba.gov/funding-programs/loans/7a-loans (all websites last visited Dec. 2, 2022).

Cir 2020); 15 U.S.C. § 636(a)(36)(B); *see id.* § 636(a)(36)(A)(iii) (defining the "covered period" for loan guarantees as February 15, 2020, to June 30, 2021). Congress authorized $817.3 billion in PPP loan guarantees over four separate appropriations. *See* CARES Act, § 1102, 134 Stat. at 293; Enhancement Act, § 101, 134 Stat. at 620; Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, 2021, Pub. L. No. 116-260, § 323, 134 Stat. 1182, 2018–19 (2020) ("Economic Aid Act"); *see id.* § 311, 134 Stat. at 2001–07; American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4, 82–85 (2021), § 5001(d)(1).

25.    For the "first draw" of the PPP, Congress initially authorized $349 billion in loan guarantees in March 2020, *see* CARES Act, § 1102, 134 Stat. at 293, adding another $310 billion in guarantees in April 2020, *see* Enhancement Act, § 101, 134 Stat. at 620; Small Bus. Admin., *First Draw PPP Loan*.[3]

26.    After creating the "second draw" of the PPP—which provided loan guarantees for some but not all small businesses that had previously received a "first draw" loan guarantee, Congress authorized $154.75 billion in both first- and second-draw loan guarantees.    *See* Economic Aid Act, 134 Stat. at 2001–07, 2018–19; American Rescue Plan Act, 135 Stat. at 82–85; Small Bus. Admin., *Second Draw PPP Loan*.[4]

---

[3]    Available    at    https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan.

[4]    Available    at    https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

27.    The CARES Act created an entirely new loan-forgiveness system for PPP loans, under which the SBA would provide 100% PPP loan forgiveness for small business borrowers that used most of the loan proceeds for payroll and certain other expenses like mortgage interest or rent payments and utility expenses.  CARES Act, § 1106, 134 Stat. at 298–99 (codified at 15 U.S.C. § 636m(b), (d)); *see* 15 U.S.C. § 636m(a)(11), (g).[5]    By pairing this new loan-forgiveness component with Section 7(a)'s loan-guarantee mechanism, the PPP functions as a grant program for eligible small businesses.

28.    The loans at issue in this case are all first-draw loans.  For these loans, the CARES Act provides that all small businesses are eligible: "***any business concern . . . shall be eligible to receive a covered loan***"—in addition to "small business concern[s], . . . nonprofit organization[s], housing cooperative[s], veterans organization[s], or [certain] Tribal business concern[s]"—so long as the business concern or other qualifying entity "employs not more than" specific numbers of employees.  15 U.S.C. § 636(a)(36)(D)(i) (emphasis added); *see id.* § 636(a)(36)(D)(i)(I)–(II).  For second-draw PPP loans—not at issue in this lawsuit—Congress defined eligible small businesses more narrowly by adopting the SBA's pre-

---

[5] Congress enacted the specific terms of loan forgiveness in Section 1106 of the CARES Act, which terms it amended with the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act"), Pub. L. No. 116-142, § 3(b), 134 Stat. 641, 641–43 (2020).  Section 1106, as amended, provides that "[a]n eligible recipient shall be eligible for forgiveness of indebtedness" if the recipient uses "at least 60 percent of the covered loan amount for [certain] payroll costs."  15 U.S.C. § 636m(b), (d)(8).

pandemic eligibility restrictions for the Section 7(a) Program. 15 U.S.C.
§ 636(a)(37)(D).

29.    The CARES Act authorized the SBA to enact emergency rules "to carry
out" the Act's purposes, 134 Stat. at 312, in addition to the SBA's existing authority
to make rules in furtherance of the Small Business Act's goals and purposes, 15
U.S.C. § 634(b)(6).

### B.    SBA Rules: Section 120.110 And The SBA Exclusion Rule

30.    Before the pandemic and the CARES Act, the SBA had limited the scope
of small businesses eligible to participate in its Section 7(a) Program through
Section 120.110, adopted in 1996. *See* Business Loan Programs, 61 Fed. Reg. 3226
(Jan. 31, 1996). Section 120.110 lists the "types of businesses" that are "ineligible"
for the Section 7(a) Program. Those businesses include: "(a) Non-profit businesses";
"(b) Financial businesses primarily engaged in the business of lending, such as banks,
finance companies, and factors"; "(d) Life insurance companies"; "(g) Businesses
deriving more than one-third of gross annual revenue from legal gambling activities";
"(j) Government-owned entities (except for businesses owned or controlled by a Native
American tribe)"; and "(r) Businesses primarily engaged in political or lobbying
activities." 13 C.F.R. § 120.110(a), (b), (d) (g), (j), (r).

31.    On April 15, 2020, the SBA published the Exclusion Rule in the Federal
Register. Without legal authorization and without any explanation, the Exclusion
Rule sought to write most of these pre-CARES Act exclusions into the CARES Act.
The Exclusion Rule achieved this remarkable result with the following single

sentence, devoid of any legal reasoning or explanation: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in the SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." *See* 85 Fed. Reg. at 20,812. Thus, by administrative cross-reference under the Exclusion Rule, "[f]inancial businesses primarily engaged in the business of lending," 13 C.F.R. § 120.110(b), are purportedly ineligible to participate in the PPP and receive first-draw loan forgiveness. 85 Fed. Reg. at 20,812. The Exclusion Rule did not explain why the businesses identified in Section 120.110, including lending businesses referenced in Subsection (b), should be denied PPP eligibility.

32. The SBA promulgated the Exclusion Rule as an interim final rule without waiting to receive and respond to public comments. *Id.* at 20,811. Nevertheless, the SBA sought post-promulgation public comments, noting that it would "consider these comments and the need for making any revisions as a result of these comments." *Id.* Yet, over two years later, the SBA has never responded to comments submitted by the American Financial Services Association ("AFSA"), which is the primary national trade association for the consumer credit industry, and others explaining that there was no basis for excluding small finance and lending companies from CARES Act relief. *See* AFSA, Comment Letter on Business Loan Program Temporary Changes; Paycheck Protection Program (Apr. 8, 2020).[6]

---

[6] Available at https://www.regulations.gov/comment/SBA-2020-0015-0027.

33.    After adopting the Exclusion Rule, the SBA promulgated a series of additional final interim rules cutting back on the Exclusion Rule, while also making a series of ad hoc exemptions *sub rosa* for various other businesses.  Most notably, the SBA incrementally made all otherwise-qualified legal gambling businesses eligible to receive and obtain forgiveness of first-draw PPP loans, *see* 85 Fed. Reg. 21,747, 21,751 (Apr. 20, 2020); 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020), offering only the vague justification (applicable equally to lending companies) that this exemption was "more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses," 85 Fed. Reg. at 23,451.  In addition, the SBA granted special exemptions from its Exclusion Rule for a number of other businesses, thereby allowing them to receive PPP benefits.  *See* 85 Fed. Reg. at 21,750 (businesses with PPP lenders as shareholders); 85 Fed. Reg. at 23,451 (certain government-owned entities); 85 Fed. Reg. 29,845, 29,848 (May 19, 2020) (electric and telephone cooperatives); 85 Fed. Reg. 35,550, 35,551 (June 11, 2020) (same).

34.    The SBA's actions unlawfully contravene the CARES Act's unambiguous language because the CARES Act provides that "*any* business concern"—meaning *every* business concern—meeting the PPP's requirements shall receive both first-draw loan guarantees and first-draw-loan forgiveness, §§ 636(a)(36)(D)(i), 636m(b) (emphasis added).

35.    The SBA provided no explanation for the Rule's exclusion from the PPP of most categories of businesses listed in Section 120.110.  Additionally, the SBA

exempted from the Rule a number of small businesses, but not small lenders, again without offering a coherent explanation of this disparate treatment.

36.    The Exclusion Rule is a significant, *permanent* regulation excluding large swathes of businesses from important financing.  The Exclusion Rule is not tailored to the COVID-19 emergency because its broad exclusions are in no way related to the provisions *implementing* the PPP loan program.   The Exclusion Rule constitutes a massive and unlawful change to the statute Congress enacted and substituted the SBA's views on how funds vital to the economy were to be distributed rather than faithfully carrying out Congress' will expressed by its choice of the word "any" in § 636(a)(36)(D)(i).

### C.    The SBA Applies The Exclusion Rule To Deny Loan Forgiveness To Plaintiffs On The Basis That They Are "Financial Businesses Primarily Engaged In The Business Of Lending"

37.    Plaintiffs are small financial businesses that are primarily engaged in the business of lending, all of whom were deeply affected by the COVID-19 pandemic's devastating effects on the economy.

38.    To mitigate this substantial financial harm, Plaintiffs applied for and received first-draw PPP loans.   Plaintiffs then used their first-draw PPP loan proceeds for eligible expenses, including by paying the wages of their employees during the height of the pandemic, when Plaintiffs' business revenues were severely throttled.

39.    All Plaintiffs (a) were operating during the covered period, 15 U.S.C. § 636(a)(36)(T); (b) had 500 or fewer employees or met the alternative size standard,

*id.* § 636(a)(36)(D)(i); and (c) used their PPP loans for eligible expenses like payroll, *id.* §§ 636(a)(36)(F)(i)(I), 636m(a)(11). All Plaintiffs were denied forgiveness of their PPP loans on the sole ground that they are financial businesses primarily engaged in the business of lending.

40.    When Plaintiffs applied for forgiveness of their first-draw loans, the SBA refused to forgive these loans under the Exclusion Rule. As a result of the SBA's denial of forgiveness of their PPP loans, many Plaintiffs have had to repay their loans or commence making payment. Plaintiffs relied on the government's promise of loan forgiveness ultimately to their harm.

41.    Plaintiffs allege their individual factual circumstances with more particularity immediately below.

42.    On April 14, 2020, the SBA approved a $156,300.00 first-draw loan guarantee for Plaintiff Avocet under the PPP. After Avocet used all of its first-draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to BTH Texas. BTH Texas approved the application for forgiveness and forwarded it to the SBA. However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since Avocet is a "[f]inancial business[ ] primarily engaged in the business of lending." Avocet appealed that denial within the SBA, but on May 18, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial.[7]

---

[7] Plaintiffs have attached as exhibits to their Complaint the OHA's loan forgiveness decisions, denying the administrative appeals filed by Avocet, Model, Freeway, and

43.    On April 10, 2020, the SBA approved a $483,600.00 first-draw loan guarantee for Plaintiff Net Pay under the PPP.  After Net Pay used all of its first-draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to KS StateBank.  KS StateBank approved the application for forgiveness and forwarded it to the SBA.  However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since Net Pay is a "[f]inancial business[ ] primarily engaged in the business of lending."  Net Pay appealed that denial within the SBA, but on April 25, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial.  Net Pay's petition for reconsideration was denied on August 22, 2022.

44.    On April 27, 2020, the SBA approved a $411,289.00 first-draw loan guarantee for Plaintiff Model under the PPP.  After Model used all of its first-draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to MUFG Union Bank.  MUFG Union Bank approved the application for forgiveness and forwarded it to the SBA.  However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since Model is a "[f]inancial business[ ] primarily engaged in the business of lending."  Model appealed that denial within the SBA, but on November 7, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial.

---

Appalachian, and denying the reconsideration petitions filed by Net Pay, Kashable, CLA, and CreditCorp.

45.    On April 9, 2020, the SBA approved a $390,805.00 first-draw loan guarantee for Plaintiff Kashable under the PPP.  After Kashable used all of its first-draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to Customers Bank.  Customers Bank approved the application for forgiveness and forwarded it to the SBA.  However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since Kashable is a "[f]inancial business[ ] primarily engaged in the business of lending." Kashable appealed that denial within the SBA, but on September 14, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial.  Kashable's petition for reconsideration was denied on October 21, 2022.

46.    On April 11, 2020, the SBA approved a $124,700.00 first-draw loan guarantee for Plaintiff CLA under the PPP.  After CLA used all of its first-draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to Enterprise Bank & Trust.  Enterprise Bank & Trust approved the application for forgiveness and forwarded it to the SBA.  However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since CLA is a "[f]inancial business[ ] primarily engaged in the business of lending."  CLA appealed that denial within the SBA, but on April 15, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial.  CLA's petition for reconsideration was denied on June 2, 2022.

47.    On April 15, 2020, the SBA approved a $687,941.00 first-draw loan guarantee for Plaintiff Freeway under the PPP.  After Freeway used all of its first-

draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to Texas Capital Bank. Texas Capital Bank approved the application for forgiveness and forwarded it to the SBA. However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since Freeway is a "[f]inancial business[ ] primarily engaged in the business of lending." Freeway appealed that denial within the SBA, but on May 2, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial.

48.    On May 2, 2020, the SBA approved a $9,999,999.00 first-draw loan guarantee for Plaintiff CreditCorp under the PPP. After CreditCorp used all of its first-draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to Wells Fargo Bank. Wells Fargo Bank approved the application for forgiveness and forwarded it to the SBA. However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since CreditCorp is a "[f]inancial business[ ] primarily engaged in the business of lending." CreditCorp appealed that denial within the SBA, but on October 21, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial. CreditCorp's petition for reconsideration was denied on November 4, 2022.

49.    On April 8, 2020, the SBA approved a $132,632.50 first-draw loan guarantee for Plaintiff Appalachian under the PPP. After Appalachian used all of its first-draw loan proceeds on eligible expenses—including payroll expenses—it submitted its application for loan forgiveness to Bank of Tennessee. Bank of Tennessee approved the application for forgiveness and forwarded it to the SBA.

However, the SBA denied the application for forgiveness in full solely based on the Exclusion Rule, since Appalachian is a "[f]inancial business[ ] primarily engaged in the business of lending." Appalachian appealed that denial within the SBA, but on August 10, 2022, the OHA denied that appeal on the exact same grounds as the SBA's prior denial.

**D.    The SBA Grants Loan Forgiveness To Numerous "Financial Businesses Primarily Engaged In The Business Of Lending," Contrary To Its Treatment Of Plaintiffs**

50.    The SBA has also arbitrarily enforced the Exclusion Rule and engaged in discriminatory treatment among "[f]inancial businesses primarily engaged in the business of lending." While the SBA has applied the Exclusion Rule to deny PPP loan forgiveness to Plaintiffs on the sole basis that they are among "[f]inancial businesses primarily engaged in the business of lending," the SBA has, at the same time and according to its own website, inexplicably granted millions of dollars of PPP loan forgiveness to numerous other companies that are "[f]inancial businesses primarily engaged in the business of lending."

51.    Many of these companies to which the SBA has granted loan forgiveness are identically situated in all relevant respects to Plaintiffs denied relief because they are "[f]inancial businesses primarily engaged in the business of lending."

### COUNT I
### Claim For Declaratory And Injunctive Relief Under 5 U.S.C. § 706(2)(A), (C) That The Exclusion Rule Is Contrary To Law

52.    Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

53.    As described more fully immediately below, the CARES Act's plain text unequivocally mandates that "any business concern" of the requisite size—meaning *every* such business concern—is eligible for a PPP first-draw loan guarantee and forgiveness.  *See* 15 U.S.C. § 636(a)(36)(D)(i).[8]  The Act's statutory history and context support this plain-text meaning.  The Exclusion Rule violates the CARES Act by purporting to make small financial businesses primarily engaged in lending (and other small businesses) ineligible for PPP first-draw loan guarantees and forgiveness.

54.    The CARES Act makes clear through its statutory text that small lending businesses are entitled to PPP eligibility.  So, because the CARES Act sets out the only requirements for small businesses to qualify for both steps of the PPP borrower process, *all* small businesses meeting the statutory criteria are eligible for first-draw PPP loan guarantees and forgiveness.  The CARES Act provides that "*any* business concern . . . *shall be eligible* to receive" a first-draw PPP loan, 15 U.S.C. § 636(a)(36)(D)(i) (emphases added), so long as that business concern complies with the CARES Act's size-limit requirements, *id.*  The CARES Act mandates that any "eligible recipient" of such a first-draw loan "shall be eligible for forgiveness" of that loan, so long as the business maintained adequate employee and wage levels and used the loan proceeds on forgiveness-eligible expenses.  15 U.S.C. § 636m(b).  Thus, *all* businesses meeting the size requirements are both "eligible to receive" a first-draw loan, § 636(a)(36)(D)(i), and "eligible for forgiveness" of that loan, § 636m(b).

---

[8] While an eligible business must also have been in operation on February 15, 2020, 15 U.S.C. § 363(a)(36)(T), and meet certain size requirements, *id.* § 363(a)(36)(D)(i)(I), (II), neither of these requirements are at issue in this lawsuit.

55.     Because *all* business concerns meeting the statutory requirements are eligible for loan guarantees under § 636(a)(36)(D)(i), they are also eligible for loan forgiveness under § 636m(b).  The plain text governing first-draw loan forgiveness makes clear that every "eligible recipient" of a PPP loan may qualify for loan forgiveness.  15 U.S.C. § 636m(b).  The Act defines an "eligible recipient" of first-draw loan forgiveness as simply a business that is "the recipient of a covered loan."  *Id.* § 636m(a)(10).  Accordingly, "any business concern"—read, *every* business concern—may qualify for loan forgiveness.

56.     The statutory history and the context of the CARES Act strongly support that the CARES Act mandates a "broad grant of eligibility," *DV Diamond Club*, 960 F.3d at 747, applying to *every* business concern of the specified size, including the businesses described in Section 120.110 and incorporated into the Exclusion Rule.

57.     The statutory history of the PPP confirms the broad eligibility for PPP loans under the CARES Act's plain text.  When Congress authorized first-draw PPP loans through the CARES Act, it placed no restrictions on the types of small business eligible to receive relief.  But when Congress authorized second-draw funding for the PPP through the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, § 101, § 311, 134 Stat. at 2001–06 (creating 15 U.S.C. 636(a)(37)), Congress limited the businesses generally eligible to receive a second-draw loan as those businesses eligible for first-draw loans, *except* for (as relevant here) "any entity that is a type of business concern . . . described in" Section 120.110, 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa).  In the very same Act, Congress amended sections of the

- 20 -

first-draw loan program to provide "clarification of and additional limitations on eligibility" for first-draw PPP loans, but these amendments did not materially alter the broad grant of eligibility provided by the CARES Act and were limited to excluding businesses "not in operation on February 15, 2020" and "entities receiving Shuttered Venue Operator Grants" from first-draw loan eligibility.  Pub. L. No. 116-260, § 310, 134 Stat. at 2000–01 (formatting altered).

58.    Congress, which is presumed to know how statutory interpretation rules work, chose the word "any" in § 636(a)(36)(D)(i) for the first-draw and, knowing what it had done there, it chose to adopt limitations the second time around.  By specifically incorporating Section 120.110 into the definition of businesses ineligible for *second-draw* loans, but not incorporating this rule into the definition of businesses ineligible for *first-draw* loans, Congress provided further evidence that Section 120.110 should *not* limit the businesses eligible for *first-draw* loans.  Any contrary conclusion would render the specific limitation as to second-draw loans legally irrelevant, violating the canon against interpreting any statutory provision in a manner that would render another provision superfluous.  This principle applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times.

59.    The context of the CARES Act reinforces this conclusion, as the Act was enacted in the early days of the COVID-19 pandemic to alleviate the incredible economic hardship caused by the COVID-19 pandemic and to provide support to as many displaced American workers as possible.  Congress's decision to impose Section

120.110 on second-draw loans while preserving broad eligibility for first-draw loans, and only making minor adjustments to the CARES Act's provisions, is entirely rational and consistent with the economic trajectory of the pandemic. During the initial months of the pandemic, the Nation's rapid economic decline necessitated the broadest terms for PPP loan eligibility, but by December of 2020, when Congress created the second-draw loan component, the economy had stabilized significantly, and thus more restrictive eligibility requirements were appropriate. Reading the CARES Act's terms under their broad, plain statutory text accords with this universally understood context. *See* Emily Cochrane & Nicholas Fandos, *Senate Approves $2 Trillion Stimulus After Bipartisan Deal*, N.Y. Times (Mar. 25, 2020);[9] Ryan Guina, *Small Business Owner? This Forgivable Loan May Help Keep Your Business Afloat During The Lockdown*, Forbes (April 1, 2020).[10]

60.    The APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

61.    The Exclusion Rule violates the CARES Act's unambiguous terms by purporting to impose additional barriers to PPP eligibility that the Act does not contemplate. The Rule provides that "[b]usinesses" that are "identified in 13 CFR

---

[9] Available at https://www.nytimes.com/2020/03/25/us/politics/coronavirus-senate-deal.html.

[10] Available at https://www.forbes.com/sites/ryanguina/2020/04/01/paycheck-protection-program-small-business-loan.

120.110" are "*not* eligible for PPP loans," "except that nonprofit organizations authorized under the Act are eligible."  85 Fed. Reg. at 20,812 (emphasis added).  So, under the Rule, "[f]inancial businesses primarily engaged in the business of lending," 13 C.F.R. § 120.110(b), and other categories of businesses may neither receive a first-draw loan guarantee under the PPP nor obtain forgiveness for such first-draw PPP loans, 85 Fed. Reg. at 20,812.

62.    The Exclusion Rule contravenes the CARES Act's unambiguous language because, as explained above, the CARES Act provides that "*any* business concern"—meaning *every* business concern—meeting the PPP's requirements shall receive both first-draw loan guarantees and first-draw-loan forgiveness, §§ 636(a)(36)(D)(i) (emphasis added), 636m(b).  The Exclusion Rule excludes small businesses primarily engaged in lending from the PPP's every-business-concern scope.  85 Fed. Reg. at 20,812.  So, because the text and structure of the CARES Act unambiguously foreclose the Exclusion Rule's interpretation of this Act, this Court must set it aside.  The intent of Congress is clear, and that is the end of the matter.

63.    Nor is any deference to the SBA's interpretation justified, since no deference is due to agency interpretations at odds with the plain language of the statute itself, as with the Exclusion Rule here.

64.    Any contrary the CARES Act that would effectively allow the SBA unfettered authority to choose which categories of businesses will receive loan forgiveness "would raise serious constitutional problems" with the Act, and thus must

be avoided.  *See Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001) (citations omitted).

65.    The executive branch can only exercise its own discrete powers reserved by Article II of the United States Constitution and such power that Congress clearly authorizes through statutory command.  *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  Congress gives such authorization when it articulates an intelligible principle to guide the Executive and its agencies that not only sanctions but also defines and cabins the delegated legislative power.  *See Mistretta v. United States*, 488 U.S. 361, 372 (1989).

66.    The nondelegation principle—"a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the constitution," *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892); *Indus. Union Dep't, AFL-CIO v. Am. Petrol. Inst.*, 448 U.S. 607, 673 (1980) (Rehnquist, J., concurring in judgment), requires Congress to "lay down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform" in order to constitutionally delegate authority, *Mistretta*, 488 U.S. at 372 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928) (brackets omitted)).  Congress must supply a specific principle to guide the agency exercising delegated authority, but the "extent and character" of the power conferred determines, at least in part, the degree of specificity required. *J.W. Hampton, Jr., & Co.*, 276 U.S. at 406; *see Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001).

67.     Congress cannot simply offer a general policy that is untethered to a lawful delegation of legislative power.  For a delegation to be proper, Congress must articulate a clear principle or directive of its congressional will within the legislative act.  *See J.W. Hampton, Jr., & Co.*, 276 U.S. at 409.  The principle must be binding, and the delegate must be "directed to conform" to it.  *Id.*

68.     If the CARES Act is so capacious as to permit the SBA to exclude any categories of small business of SBA's choosing from the PPP program, that "would raise serious constitutional problems" with the Act.  *See Solid Waste Agency of N. Cook Cty.*, 531 U.S. at 173 (citations omitted).  In particular, if the CARES Act allows the SBA to choose which categories of businesses will and will not receive loan forgiveness, the Act would lack a sufficiently intelligible principle as would justify such an expansive "degree of agency discretion."  *See Whitman*, 531 U.S. at 475.

69.     Plaintiffs offer a text-based reading of the CARES Act that avoids these constitutional problems, and that reading is mandatory under the doctrine of constitutional avoidance.  *See Solid Waste Agency of N. Cook Cty.*, 531 U.S. at 173.

70.     Similarly, the Exclusion Rule is unlawful under the "closely related" major-questions doctrine, *NFIB v. OSHA*, 142 S. Ct. 661, 668 (2022) (Gorsuch, J., concurring), which provides than an agency "must point to clear congressional authorization for [any] power it claims" to decide "major policy decisions," including those that carry "economic and political significance."  *West Virginia v. EPA*, 142 S. Ct. 2587, 2608–09 (2022) (citations omitted).  To the extent that this Court concludes that the CARES Act is ambiguous as to whether it allows the SBA to choose which

categories of businesses will and will not receive loan forgiveness, that conclusion would require invalidating the Exclusion Rule under the major-questions doctrine. After all, deciding whether categories of businesses will receive over $600 billion in loan forgiveness, so that those businesses can survive the worst pandemic in a century, would unquestionably empower SBA to decide a "major policy decision[ ]" of "economic and political significance," and SBA cannot make such a choice without "clear congressional authorization." *Id.*; *see Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (per curiam).

71.    Given that the Exclusion Rule is clearly contrary to the plain text of the CARES Act, the Rule is unlawful.

## COUNT II
### Claim For Declaratory And Injunctive Relief Under 5 U.S.C. § 706(2)(A) That The Exclusion Rule's Denial Of Loan Forgiveness To "Financial Businesses Primarily Engaged In The Business Of Lending" But Not To Other Categories Of Companies Identified In Section 120.110 Is Arbitrary And Capricious

72.    Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

73.    The APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

74.    The Exclusion Rule is arbitrary and capricious for two independent, but related reasons as to this Count: In the first place, the SBA provided no explanation for the Rule's exclusion from the PPP of most categories of businesses listed in Section

120.110. Thereafter, the SBA exempted from the Rule a number of small businesses, but not small lenders, again without offering a coherent explanation for this disparate treatment.

75.      The APA requires an agency to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. This "reasoned explanation" is a critical component of agency action and is particularly vital when such action sets policy. Agency decisionmaking must be grounded in relevant factors and anchored to the purposes of the underlying Act because when an agency circumvents this deliberative process, the outcomes of its actions become a "sport of chance." Further, under bedrock administrative law principles, an agency's failure to provide any explanation for a rule violates the APA. Here, the Exclusion Rule simply states that "[b]usinesses that are not eligible for PPP loans are identified in 13 CFR 120.110," *without offering any elaboration of why the SBA made this determination*, 85 Fed. Reg. at 20,812. The SBA's failure to provide a contemporaneous explanation for the Rule is, by itself, fatal to the Rule.

76.      The APA's arbitrary-and-capricious standard also requires an agency to provide sufficient reasons for treating similar situations differently. This means that an agency action is arbitrary and capricious under the APA when the action constitutes disparate treatment of similarly situated entities, and the agency fails to justify that disparate treatment at the time that it takes the action.

77. The SBA's unexplained (and inexplicable) decision to exempt numerous categories of businesses from its own self-created, non-statutory exclusion from the CARES Act's mandate that "*any* business concern . . . *shall be eligible* to receive" a first-draw PPP loan, 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added), provides an additional reason for the Rule's vacatur. This disparate treatment of small lending companies, including Plaintiffs, and other categories of small businesses in the Exclusion Rule is arbitrary and capricious under the APA.

78. Further highlighting the SBA's arbitrary and capricious treatment of Plaintiffs, the SBA has also failed to explain why it simultaneously provided forgiveness to many other small businesses listed in Section 120.110 via subsequent PPP regulations, including those performing far less critical functions than lending companies, *see* 85 Fed. Reg. at 21,751 (gambling companies); 85 Fed. Reg. at 23,451 (same); 85 Fed. Reg. at 21,750 (businesses with PPP lenders as shareholders); 85 Fed. Reg. at 23,451 (certain government-owned entities); 85 Fed. Reg. at 29,848 (electric and telephone cooperatives); 85 Fed. Reg. at 35,551 (same), as well as apparent ad hoc exemptions for various types of non-lending businesses.

79. For example, when the SBA exempted gambling entities from the Exclusion Rule shortly after its enactment, the agency gave no justification for why gambling businesses, out of all the categories of small businesses excluded in Section 120.110, now deserved PPP relief. In its initial rule exempting certain gambling companies, the SBA explained that this approach was more consistent "with the policy aim of making PPP loans available to a broad segment of U.S.

businesses." 85 Fed. Reg. at 21,751. In a subsequent rule that eliminated PPP restrictions on legal gambling companies shortly after, the SBA repeated the same hollow rationale, again explaining that "this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses." 85 Fed. Reg. at 23,451.

80.    Small businesses primarily engaged in the business of lending are at least similarly situated to gambling businesses with respect to receiving loans and are, in fact, more deserving of loan forgiveness. Small lending and finance companies are certainly part of the "broad segment of U.S. businesses" the SBA has recognized as intended beneficiaries of the PPP, *id.*, and their employees are every bit as deserving of job security during a global pandemic as the croupiers, sports touts, blackjack dealers, and cocktail waitresses employed by legal gambling establishments. Like the carve-outs from the Exclusion Rule accorded favored entities, a carve-out for small lending companies would clearly support Congress' "policy aim of making PPP loans available to a broad segment of U.S. businesses." *Id.*

81.    The SBA's shifting interpretation of PPP eligibility has created a sport of chance. Whether a small business is eligible for forgiveness depends not only on the current categories of eligible businesses, but also on the SBA's application of the Exclusion Rule within a category of business. From the time Congress created the PPP, the SBA has subjected small businesses to multiple iterations of its "policy aim" of providing relief from the pandemic's economic effects through PPP loans, in violation of the APA.

## COUNT III

### Claim For Declaratory And Injunctive Relief Under 5 U.S.C. § 706(2)(A) That The Exclusion Rule And Any Denial Of PPP Loan Forgiveness Issued On The Basis That The Company Is A "Financial Business[ ] Primarily Engaged In The Business Of Lending" Are Arbitrary And Capricious Because Of The SBA's Arbitrary Enforcement Of The Exclusion Rule And Its Repeated Grants Of Forgiveness To Many "Financial Businesses Primarily Engaged In The Business Of Lending"

82. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

83. As discussed above, the APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

84. By barring arbitrary and capricious agency action, the APA prohibits unexplained, disparate treatment of similarly situated entities. Put another way, the APA's arbitrary-and-capricious standard requires an agency to provide sufficient reasons for treating similar situations differently.

85. Here, the SBA has arbitrarily enforced the Exclusion Rule by denying loan forgiveness to many companies, including Plaintiffs, that are "[f]inancial businesses primarily engaged in the business of lending," while granting loan forgiveness to many other companies that are similarly "[f]inancial businesses primarily engaged in the business of lending," in violation of the APA.

86. The SBA denied forgiveness to Plaintiffs on the sole basis that those firms were "engaged in the business of lending." Yet, the SBA has forgiven numerous

PPP loans received by "[f]inancial businesses primarily engaged in the business of lending."

87.     The SBA has never—and could not possibly—provide any explanation for its arbitrary enforcement of the Exclusion Rule and discriminatory treatment among "[f]inancial businesses primarily engaged in the business of lending," in violation of the APA.

88.     Accordingly, the Exclusion Rule and any SBA denial of loan forgiveness on the basis that a company is a "[f]inancial business[ ] primarily engaged in the business of lending" are arbitrary and capricious, in violation of the APA.

## COUNT IV
## Claim For Declaratory Judgment Under 28 U.S.C. § 2201(a)

89.     Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

90.     For the foregoing reasons, Plaintiffs request that the Court declare the Exclusion Rule unlawful and void.

91.     For the foregoing reasons, Plaintiffs request that the Court declare that any SBA denial of loan forgiveness on the basis that the company is a "[f]inancial business[ ] primarily engaged in the business of lending" is unlawful and void.

## COUNT V
## Claim For Declaratory And Injunctive Relief Under 5 U.S.C. § 706(2)(A), (C) That The SBA's Denial Of Plaintiffs' Requests For Loan Forgiveness Is Arbitrary, Capricious, And Contrary To Law

92.     Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

93.    The SBA's denial of loan forgiveness to Plaintiffs Avocet, Net Pay, Model, Kashable, CLA, Freeway, CreditCorp, and Appalachian on the basis that those companies are "[f]inancial businesses primarily engaged in the business of lending" is arbitrary, capricious, and contrary to law.  5 U.S.C. § 706(2)(A), (C).

94.    While Plaintiffs believe Counts I–IV, *supra*, should provide complete relief and forgiveness of their PPP loans in full, Plaintiffs bring this Count out of an excess of caution, in order to assure the preservation of their rights.

95.    The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff Avocet's application for loan forgiveness based upon the unlawful Exclusion Rule.  Plaintiff Avocet has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

96.    The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff Net Pay's application for loan forgiveness based upon the unlawful Exclusion Rule.  Plaintiff Net Pay has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

97.    The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff Model's application for loan forgiveness based upon the unlawful Exclusion Rule.  Plaintiff Model has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

98.    The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff Kashable's application for loan forgiveness based upon the unlawful

Exclusion Rule.  Plaintiff Kashable has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

99.    The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff CLA's application for loan forgiveness based upon the unlawful Exclusion Rule.  Plaintiff CLA has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

100.   The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff Freeway's application for loan forgiveness based upon the unlawful Exclusion Rule.  Plaintiff Freeway has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

101.   The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff CreditCorp's application for loan forgiveness based upon the unlawful Exclusion Rule.  Plaintiff CreditCorp has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

102.   The SBA arbitrarily, capriciously, and without statutory authority denied Plaintiff Appalachian's application for loan forgiveness based upon the unlawful Exclusion Rule.  Plaintiff Appalachian has exhausted its administrative remedies and appeals the OHA denial of its appeal of the adverse SBA loan forgiveness decision.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully pray that the Court order the following

relief:

a.    Declare that the Exclusion Rule is not authorized by, and is contrary to, the law;

b.    Declare that the Exclusion Rule is arbitrary and capricious;

c.    Declare that the Exclusion Rule violates the Administrative Procedure Act;

d.    Hold unlawful, vacate, and set aside the Exclusion Rule;

e.    Hold that the SBA's arbitrary enforcement of the Exclusion Rule and discriminatory treatment among "[f]inancial businesses primarily engaged in the business of lending" violate the Administrative Procedure Act;

f.    Hold that any denial issued by the SBA on the basis that the company is a "[f]inancial business[ ] primarily engaged in the business of lending" is not authorized by, and is contrary to, the law;

g.    Permanently enjoin Defendants from enforcing the Exclusion Rule nationwide, including applying that Rule to deny any request for loan forgiveness, as to "[f]inancial businesses primarily engaged in the business of lending," including Plaintiffs who were denied forgiveness of their PPP loans due to the Exclusion Rule;

h.    Permanently enjoin Defendants from denying loan forgiveness to a company on the basis that it is a "[f]inancial business[ ] primarily engaged in the business of lending";

i.    Enjoin Defendants to grant forgiveness of all first-draw PPP loans to Plaintiffs and other "[f]inancial businesses primarily engaged in the business of lending" who were denied forgiveness because they are "[f]inancial businesses primarily engaged in the business of lending";

j.    Enjoin Defendants to reimburse Plaintiffs and other "[f]inancial businesses primarily engaged in the business of lending" who were denied forgiveness first-draw PPP loans because they are "[f]inancial businesses primarily engaged in the business of lending" for any and all payments they have made on PPP loans;

k.  Award costs and reasonable attorney fees to the extent permitted by law; and

l.  Grant such other relief as this Court may deem just and proper.

Dated: December 2, 2022

Respectfully Submitted,

/s/ John C. Sullivan
JOHN C. SULLIVAN
*Trial Counsel*
Tex. Bar Number: 24083920
S | L LAW PLLC
610 Uptown Blvd, Ste. 2000
Cedar Hill, TX 75104
(469) 523-1351
john.sullivan@the-sl-lawfirm.com

JEREMY T. ROSENBLUM*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4867
jeremy.rosenblum@troutman.com

MISHA TSEYTLIN*
KEVIN M. LEROY*
EMILY A. O'BRIEN*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street, Ste. 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

*Counsel for Plaintiffs*

*\*pro hac vice forthcoming*